## Chapman, Jr. v. Chapman, Sr.

(Decided June 2, 1925.)

### Appeal from Martin Circuit Court.

1. Adverse Possession—Grant of Land Embraced in Prior Grant.— A grant from the state issued in 1851 for land embraced in prior grants is absolutely void.
2. Champerty and Maintenance—Adverse Possession.—A sale of land by title bond of which another was then in adverse possession is champertous and void.

J. B. CLARK and A. J. KIRK for appellant.

W. R. McCOY, A. COPLEY and C. B. WHEELER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

George Chapman, Jr., brought this action against George Chapman, Sr., and three other persons on October 8, 1900. He alleged in his petition that he and George Chapman, Sr., surveyed and on February 1, 1881, obtained a patent from the Commonwealth for two hundred acres of land; that the patent was issued in his name but was delivered to George Chapman, Sr., that they were joint owners of the land; and that the defendants were stripping the land of its timber. He prayed judgment for a division of the land and for the value of one-half the timber which had been taken off. Process was duly issued and served. George Chapman, Sr.,

filed no answer but the other defendants filed answers denying the title of George Chapman, Jr., and pleading that they had paid George Chapman, Sr. for the timber they had cut. The action then went to sleep until April 2, 1907 when the plaintiff filed an amended petition alleging that George Chapman, Sr., was dead; that his children were in possession of the land and had removed a large amount of timber, and prayed a judgment against them for one-half the value thereof. The children filed an answer and counterclaim on March 6, 1911, in which they denied that George Chapman, Jr., had any interest in the land, and pleaded that it was the property of George Chapman, Sr., that he lived on it, controlled it, divided it among his children and at his death had devised to them severally the parts assigned to them, and that at his death it was understood that this action had been dismissed. The plaintiff filed a reply to the answer and counterclaim denying its allegations on April 3, 1912. After this the action went to sleep again until the summer of 1919 when additional pleadings were filed. On August 22, 1922, Adam Runyons and Bunyon Triplett filed their petition to be made parties to the action, alleging that George Chapman, Jr., in the year 1888 had sold by title bond to Harrison Runyons his one-half interest in the tract of land in controversy, but had never made him a deed and that Harrison Runyons had sold and agreed to convey this half interest to Adam Runyons and he had sold and conveyed it to Bunyon Triplett. They prayed that he be adjudged the owner of the land. The issues were made up, proof was taken. On final hearing the circuit court dismissed the petition of George Chapman, Jr., also the intervening petition of Adam Runyons, &c., and adjudged the land to the children and devisees of George Chapman, Sr. From this judgment George Chapman, Jr., appeals.

The bond executed by George Chapman, Jr., to Harrison Runyons is shown to be lost. But George Chapman, Jr., produced a bond executed by Harrison Runyons to him on April 7, 1906, which sets out that George Chapman, Jr., did in the year 1888 sell and give a bond for title to Harrison Runyons for one-half of this land; that Harrison Runyons had failed to pay for the land and that Chapman agreed to pay back to him the amount he had paid, $40.00, and executed to him a note therefor. For this consideration the former contract

between them for the land was rescinded and Runyons quitclaimed to Chapman his heirs and assigns the land.

The proof shows that when the land was patented it was all in virgin timber with no settlement upon it. It also shows that George Chapman, Sr., before his death moved upon the place and made a settlement upon it, but how long this was before the action was originally brought does not definitely appear. It is also shown that in 1897 George Chapman, Sr., was sued by the Tug River Coal and Salt Company for this land, and that in that action he alleged that he was the owner of it and obtained a judgment adjudging that he was the owner of it; that George Chapman, Jr., knew of this action and gave his deposition in it for the coal and salt company. It is undisputed that from this time on George Chapman, Sr., claimed the land as his own and remained in possession of it until his death, when the possession passed to his children, who have since been in adverse possession of it. It was also established by the proof, beyond question, that the patent issued in 1881 covered land lying wholly within older patents and that the children of George Chapman, Sr., had since his death made their peace with the holders of these older patents by buying and getting deeds from them. On these facts the circuit court made the following findings:

(1) The patent issued in 1881 under which plaintiff claimed was void and conferred no title either upon him or George Chapman, Sr.

(2) Plaintiff sold to Harrison Runyons his claim to the land in 1888. The transfer from Harrison Runyons to him of this claim in 1906 was made when the land was in the adverse possession of the defendants. They also were in such adverse possession when Harrison Runyons sold to Adam Runyons and when he sold to Bunyon Triplett.

(3) The land was not held by George Chapman, Sr., or his children after him as a cotenant of plaintiff.

These findings of the court are clearly supported by the proof. The claim of George Chapman, Jr., of title to the land rests entirely upon the patent issued in 1881 and that patent being void he is wholly without title. The evidence utterly fails to show any adverse possession continuously for fifteen years by any one as the cotenant of George Chapman, Jr. Every act

of George Chapman, Sr., shown by the proof, was a disavowal of any such tenancy. In 1897 he claimed the land as his own and procured a judgment to this effect. After this he made contracts for the cutting of the timber and collected and used the money as his own when the timber was cut and paid for. He used the land and lived upon it without any payment of rent or the recognition of any claim thereto. He divided the land among his children and by his will devised it to them. After his death it is conceded that the children held the land adversely and they merely continued the possession which their father had held.

Judgment affirmed.